530 S.E.2d 369

**QUALITY TOWING, INC., Appellant,**

v.

**CITY OF MYRTLE BEACH, Respondent.**

No. 25103.

Supreme Court of South Carolina.

Heard Feb. 16, 2000.
Decided April 3, 2000.

30

Robert C. Childs, III, of Mitchell, Bouton, Yokel & Childs, of Greenville, for appellant.

James B. Van Osdell, and Charles B. Jordan, Jr., of Van Osdell, Lester, Howe & Jordan, P.A., of Myrtle Beach, for respondent.

BURNETT, Justice:

This case involves an alleged conflict between a city ordinance and a state statute. The trial court ruled the statute and ordinance did not conflict. We affirm in part and reverse in part.

## FACTS

Appellant is a towing service operating in the City of Myrtle Beach (the city). In early 1996, the city enacted an ordinance imposing certain conditions and maximum rates a wrecker service could charge for tows of unauthorized vehicles from private property ("involuntary tows") made pursuant to S.C.Code Ann. § 16–11–760 (1976). Myrtle Beach City Code § 23–133 (1996). Appellant challenged the validity of the ordinance, and the trial court granted summary judgment to the city. This appeal follows.

## ISSUES

I. Did the trial court err in limiting the scope of appellant's attack on the ordinance?

II. Did the trial court err in finding appellant lacked standing to challenge subsections (a) and (b) of the ordinance?

III. Does the ordinance conflict with state law?

IV. Did the trial court err in finding subsection (d) severable?

V. Did the trial court err in dismissing appellant's inverse condemnation cause of action?

VI. Did the trial court err in dismissing appellant's § 1983 claim?

## STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), SCRCP; *Baughman v. American Tel. & Tel. Co.*, 306 S.C. 101, 410 S.E.2d 537 (1991). In determining whether any triable issue of fact exists, as will preclude summary judgment; the evidence and all inferences which can be reasonably drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Strother v. Lexington County Recreation Comm'n*, 332 S.C. 54, 504 S.E.2d 117 (1998).

## DISCUSSION

I.   Did the trial court err in limiting the scope of appellant's attack on the ordinance?

■ In its order granting the city's motion for summary judgment, the trial court expressly declined to address any issues other than the validity of the rate schedule contained in § 23–133(a) of the city ordinance. The court stated: "This is Quality's sole ground in its Complaint alleging a conflict between the ordinance and state law. The Complaint, in fact, specifically narrowed Quality's objection to the ordinance to the one issue of the rate schedule." Appellant argues the trial court erred in limiting its scope of attack on the ordinance to the issue of the rate schedule. We agree.

Pleadings are to be liberally construed "to do substantial justice to all parties." Rule 8(f), SCRCP; *Hughes v. Water World Water Slide, Inc.*, 314 S.C. 211, 442 S.E.2d 584 (1994). Appellant's complaint, while focusing primarily on the rate schedule, gave notice that appellant wished to challenge "the maximum amount that can be charged for the towing of vehicles from private property *and the manner in which vehicles may be towed from private property.*" (emphasis added). Moreover, appellant argued the invalidity of other portions of the ordinance in its memorandum in opposition to the city's motion for summary judgment and at the motion hearing. We conclude appellant challenged the validity of the ordinance as a whole, and not just the rate schedule in subsection (d).

## II. Did the trial court err in finding appellant lacked standing to challenge subsections (a) and (b) of the ordinance?

■ Appellant argues the trial court erred in ruling it lacked standing to challenge the validity of subsections (a) and (b) of the ordinance. Subsection (a) requires property owners to place certain signs in their parking lots before they can lawfully have a vehicle towed. Subsection (b) makes the property owner guilty of a misdemeanor if it has a vehicle towed without complying with the signage requirements in subsection (a) or if the vehicle is shown to have been legally parked. Thus, these subsections apply directly to property owners, not to towing services. Nevertheless, we conclude appellant has standing to challenge the entire ordinance.

■ A private party "may not invoke judicial power to determine the validity of executive or legislative action unless he has sustained, or is in danger of sustaining, prejudice therefrom." *Florence Morning News v. Building Comm'n,* 265 S.C. 389, 398, 218 S.E.2d 881, 884–85 (1975). "[S]uch imminent prejudice must be of a personal nature to the party laying claim to standing and not merely of general interest common to all members of the public." *Citizens for Lee County, Inc. v. Lee County,* 308 S.C. 23, 29, 416 S.E.2d 641, 645 (1992).

Appellant has standing to challenge subsections (a) and (b) of the ordinance because of the impact the restrictions potentially have on its own income. "[V]endors and those in like positions have been uniformly permitted to resist efforts at restricting their operations by acting as advocates of the rights of third parties who seek access to their market or function." *Craig v. Boren,* 429 U.S. 190, 195, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). In *Craig,* the United States Supreme Court permitted a 3.2% beer vendor to challenge the constitutionality of a statute permitting the sale of 3.2% beer to females over the age of eighteen, but prohibiting its sale to males under the age of twenty-one. Because enforcement of the statute directly affected the vendor, she was permitted to assert the equal protection rights of males between the ages of eighteen and twenty-one.

Although *Craig* is not binding upon this Court, we find its reasoning persuasive. Like the beer vendor in *Craig,* appellant is the potential party economically affected by the ordinance, and therefore the one with the most motivation to challenge the ordinance. Moreover, the harm to appellant is "of a personal nature ... and not merely of general interest common to all members of the public." *Citizens for Lee County,* 308 S.C. at 29, 416 S.E.2d at 645.

Having concluded appellant has standing to challenge the entire ordinance and the trial court should have permitted appellant to challenge the ordinance as a whole and not just the rate provisions, we now turn to the question whether the ordinance conflicts with state law.

### III. Does the ordinance conflict with state law?

■ Determining if a local ordinance is valid is a two-step process: (1) Did the municipality have the power to enact the ordinance?, and (2) Is the ordinance inconsistent with the Constitution or general law of the State? *Hospitality Ass'n of S.C. v. County of Charleston,* 320 S.C. 219, 224, 464 S.E.2d 113, 116 (1995). Appellant does not challenge the city's power to enact the ordinance. Rather, it argues the ordinance conflicts with state law. We disagree.

■ The ordinance makes it "unlawful to remove any motor vehicle from private property without authorization from the owner of the motor vehicle or of the city," unless certain conditions are met. Myrtle Beach City Code § 23–133 (1996). Some of the conditions apply to property owners, such as requirements concerning the location and content of signs. § 23–133(a). It is a misdemeanor for a property owner to have a vehicle towed without comporting with the signage requirements. § 23–133(b). Other conditions apply to towing companies, such as requirements that the towing company obtain written authorization from the property owner prior to towing a vehicle, maintain certain records of towed vehicles, notify the police department within thirty minutes of a tow, and have an attendant on call twenty-four hours a day, seven days a week, to release vehicles. § 23–133(c) & (e). The ordinance also imposes maximum fees which can be charged

for towing and storage. § 23–133(d). There are no penalties specified in the ordinance for violations by towing companies.

State law forbids parking vehicles on private property without permission from the owner and permits involuntary tows of such vehicles:

It shall be unlawful for any person to park a motor-driven or other vehicle on the private property of another without the owner's consent, if the property owner shall post a notice in a conspicuous place on the borders of such property near each entrance prohibiting such parking. Proof of the posting shall be deemed and taken as notice conclusive against the person making entry.

Any motor-driven or other vehicle found parked on private property as provided in this section may be towed away and stored at the expense of the vehicle owner, and such towing and storage charge shall constitute a lien against such vehicle.

. . .

Any person violating the provisions of this section is guilty of a misdemeanor and upon conviction must be punished by a fine of not less than twenty-five dollars and not exceeding one hundred dollars or by imprisonment for a term not exceeding thirty days, and this punishment is in addition to the other remedies which are authorized in this section.

S.C.Code Ann. § 16–11–760 (1976). Thus, the focus of the state statute is on the conduct of the vehicle owner, whereas the focus of the city ordinance is on the conduct of the property owner and towing company.

In *Town of Hilton Head Island v. Fine Liquors, Ltd.,* 302 S.C. 550, 397 S.E.2d 662 (1990), we found a local ordinance prohibiting the use of internally illuminated signs visible from any public right of way or beach did not conflict with a state statute permitting the placement of red dots not exceeding thirty-six inches in diameter on each side, the rear, and front of liquor stores. We explained:

[I]n order for there to be a conflict between a state statute and a municipal ordinance both must contain either express or implied conditions which are inconsistent or irreconcilable with each other. Mere differences in detail do not render

them conflicting. If either is silent where the other speaks, there can be no conflict between them.

*Id.* at 553, 397 S.E.2d at 664 (internal quotations omitted). Because the statute was silent on the issue of illumination, we found no conflict.

We conclude *Fine Liquors* is controlling. The statute at issue in this case makes it unlawful to park on private property if the property owner has posted a sign in a conspicuous place near the entrance. S.C.Code Ann. § 16–11–760 (1976). The statute also provides that an unlawfully parked vehicle may be towed at the owner's expense and any towing and storage charges shall constitute a lien on the vehicle. *Id.* The statute is silent as to the content of the signs, the amounts to be charged for towing and storage, the records to be maintained, or any of the other details dealt with in the ordinance.[1] Moreover, the "mere differences in detail" concerning the location and number of signs to be posted do not render the statutes conflicting. *See Fine Liquors,* 302 S.C. at 553, 397 S.E.2d at 664.[2]

■ Our constitution mandates "home rule" for local governments. S.C. Const. art. VIII. "Implicit in Article VIII is the realization that different local governments have different problems that require different solutions." *Hospitality Ass'n,* 320 S.C. at 230, 464 S.E.2d at 120. As a city whose economy is based largely on tourism, Myrtle Beach was privileged to enact an ordinance to deal with its peculiarly local towing problems. Appellant has not argued § 23–133 was beyond the city's police power, and we conclude the ordinance does not conflict with S.C.Code Ann. § 16–11–760 (1976).

---

1. We recognize the ordinance only permits a separate storage fee after the first twelve hours. However, we perceive no conflict between this limitation and the statute's general statement that an illegally parked vehicle "may be towed away and stored at the expense of the vehicle owner." S.C.Code Ann. § 16–11–760 (1976). The statute does not address how a towing service may calculate its fees.

2. Appellant relies on *Diamonds v. Greenville County,* 325 S.C. 154, 480 S.E.2d 718 (1997), for its argument that the ordinance is invalid because it makes conduct unlawful in Myrtle Beach that is lawful in the rest of the state. *Diamonds* addresses ordinances which implicate First Amendment rights. We do not interpret our opinion in *Diamonds* to eviscerate home rule.

### IV. Did the trial court err in finding
subsection (d) severable?

Appellant argues the trial court erred in ruling subsection (d) is severable from the remainder of the ordinance. Because we conclude the ordinance is valid, we need not address severability.

### V. Did the trial court err in dismissing appellant's
inverse condemnation cause of action?

■ Appellant argues the trial court erred in dismissing its inverse condemnation cause of action. We disagree.

■ An action for inverse condemnation is appropriate where the government takes private property for public use. *See South Carolina State Hwy. Dep't v. Moody,* 267 S.C. 130, 136, 226 S.E.2d 423, 425 (1976). The State's exercise of its eminent domain power is distinguished from its exercise of the police power. *Myers v. Real Property at 1518 Holmes Street,* 306 S.C. 232, 235, 411 S.E.2d 209, 211 (1991). "[J]ust compensation is required in the case of the exercise of eminent domain but not for the loss by the property owner which results from the constitutional exercise of the police power." *South Carolina State Hwy. Dep't. v. Wilson,* 254 S.C. 360, 365, 175 S.E.2d 391, 394 (1970). The exception to the rule is when police power regulation denies all economically beneficial use of land. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992).

This is not such a case. Appellant does not claim Myrtle Beach City Code § 23–133 deprived it of all economically beneficial use of its property. Rather, it argues the city "took the Appellant's right to do business with private property owners in the City of Myrtle Beach and imposed significant and costly requirements over that right." This assertion fails to state a claim for inverse condemnation and the trial court properly granted the city summary judgment as to that claim.

### VI. Did the trial court err in dismissing
appellant's § 1983 claim?

■ Appellant argues the trial court erred in dismissing its § 1983 claim. We disagree.

■ 42 U.S.C.A. § 1983 (1984) provides a private cause of action for individuals deprived by the government of their

constitutional rights. Appellant has not alleged it has been deprived of a constitutionally protected right. The cases cited by appellant are distinguishable. The wrecker services in those cases had state-created property rights in remaining on government wrecker rotation lists, and could not therefore be removed from the lists without due process of law. *See Pritchett v. Alford,* 973 F.2d 307 (4th Cir.1992), *Gregg v. Lawson,* 732 F.Supp. 849 (E.D.Tenn.1989). Appellant does not claim to have been deprived of a similar property right. "The individual's privilege to use property freely is always subject to a legitimate exercise of the police power under which new burdens and restrictions may be imposed when the public welfare demands." *Peoples Program for Endangered Species v. Sexton,* 323 S.C. 526, 529, 476 S.E.2d 477, 479(996). The trial court properly granted summary judgment to the city because appellant failed to state a cause of action under § 1983.

## CONCLUSION

The trial court erred in refusing to allow appellant to attack the validity of the ordinance as a whole and in failing to rule on it. Nevertheless, on the merits, the ordinance does not conflict with the state towing statute.

**AFFIRMED IN PART; REVERSED IN PART.**

FINNEY, C.J., TOAL, MOORE, and WALLER, JJ., concur.